UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT S. KELLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No. 23 CV 15885 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| BOP OFFICER TAWANA F. INGRAM, | ) | |
| UNKNOWN JOHN AND JANE DOE | ) | |
| BOP OFFICERS, LATASHA KEBE | ) | |
| (also known as "TASHA K"). | ) | |

---

## FIRST AMENDED COMPLAINT

Plaintiff, ROBERT S. KELLY, by his undersigned attorney, for his complaint against the United States of America, BOP Officer Tawana F. Ingram  ("Defendant Ingram"), Unknown John and Jane Doe BOP Officers (collectively "BOP Defendants"), and LaTasha Kebe (also known as "Tasha K").

## INTRODUCTION

1.     Plaintiff sues the United States of America, BOP Officer Ingram, Unknown John and Jane Doe BOP Officers, and Latasha Kebe for negligence, invasion of privacy, conversion, civil conspiracy, intentional infliction of emotional distress, and willful and wanton conduct brought under the Federal Tort Claims Act ("FTCA"). Plaintiff also brings suit against the Defendant Ingraham for violation of the Computer Fraud and Abuse Act ("CFAA")

2.      Plaintiff is a high profile prisoner of the Bureau of Prisons ("BOP"). He is a Grammy-award winning recording artist and a nationally recognized celebrity.

1

As with all prisoners, but particularly because of Plaintiff's status, the United States of America through the BOP had a duty to protect Plaintiff and his private and sensitive information to ensure that its employees did not exploit Plaintiff for financial gain or for any other reason.

3. The Defendant United States of America breached its duty of care to the Plaintiff when it allowed countless BOP officers to access Plaintiff's confidential information without any legal basis to do so. The Defendant Unites States of America knew that Defendant Ingram and other Defendant John and Jane Doe BOP Officers routinely accessed Plaintiff's private information from its systems and divulged private information to third parties for monetary gain, clout, or simple harassment.

4. Because of the United States of America's breach, at least 60 BOP officers made unauthorized access to Plaintiff's sensitive, confidential, and private information maintained by the BOP on its electronic system known as TruView. Some of those BOP officers either shared and/or sold that information to third parties including members of the media and witnesses in Plaintiff's criminal prosecution.

5. Defendant Ingram accessed Plaintiff's private BOP records ("TruView records"), including email communications, visiting lists, inmate trust account information, and recorded phone calls with third parties and Plaintiff's attorneys without authority to do so. The information was private and concerned personal matters; it was *not* public information. After unlawfully accessing the foregoing

protected information, Defendant Ingram unlawfully downloaded the information and sold said information to Defendant Kebe, a popular YouTube Blogger with over 1 million subscribers, who published the private information publicly without identifying how she received it.

6. Defendant Kebe rallied her massive following to harass the Plaintiff with the use of the stolen information and created chaos in Plaintiff's personal life, even using the information to influence witnesses in Plaintiff's EDNY criminal prosecution. On information and belief, the stolen information was shared with and used by prosecutors from United States Attorney's Office as a tool to influence witnesses against Plaintiff. The sale of the information yielded profits that neither Defendant Ingram nor Defendant Kebe were entitled to and which belonged to the Plaintiff if anyone.

7. The Department of Justice Office of the Inspector General investigation initiated a secret investigation into the unauthorized access of Plaintiff's sensitive information. The Department did not inform Plaintiff of the investigation and never has. Plaintiff later learned that the investigation resulted in the issuance of a search warrant for a BOP computer used by Defendant BOP Officer A and forensic analysis of the computer.

8. According to an affidavit of Special Agent Matt Loux of the Department of Justice later obtained by Plaintiff's attorney, probable cause existed to believe that Defendant BOP Officer A committed a criminal violation of 18 U.S.C. § 1030(a)(2)B), that is, unauthorized access of a computer to obtain information

from the Federal Bureau of Prisons. No charges were brought against Defendant Ingram, and the government had refused to reveal any details about the investigation including the identity Defendant Ingram until after the filing of this lawsuit. In short, there was a cover-up of the rampant BOP misconduct that is ongoing.

9.     Even after this so-called investigation, unlawful access of Plaintiff's TruView records continued. Even *after* being put on notice of repeated violations of the CFAA by BOP employees, the United States failed to protect Plaintiff and breached its duty to protect his private and sensitive information.

10.     For example, Defendant Unknown John or Jane Doe BOP Officer made an unauthorized access to Plaintiff's TruView records and obtained information about Plaintiff's trust account funds in August of 2022. That Unknown Defendant BOP Officer divulged the information to a journalist for the Washington Post who published the personal information. The publication not only placed Plaintiff in a false light, falsely suggesting he was concealing his resources (the monies were actually generous gifts from his loyal fan base) but resulted in the DOJ confiscating nearly all of Plaintiff's monies held in his prison trust account, over $25,000. Plaintiff was forced to pay for legal services to litigate the unjustified taking of the money (an issue that is now pending before the Second Circuit Court of Appeals) Plaintiff maintains that the DOJ had no authority to confiscate those funds which would have not occurred in any event if the information was not leaked to the public by a Defendant Unknown John or Jane Doe BOP Officer.

11.     Defendant BOP Officers committed the torts of invasion of privacy, conversion, civil conspiracy, intentional infliction of emotional distress, and willful and wanton misconduct. The Defendant BOP Officers, including Defendant Ingram also committed violations of the Computer Fraud and Abuse Act ("CFAA")

12.     Plaintiff suffered a multitude of loss and damages as a result of the Defendant United States of America's negligence and the torts committed by Defendant Ingram, and other unknown John and Jane Doe BOP officers, including but not limited to legal fees and emotional and psychological distress.

13.      Separately, losses in excess of $5000 accrued as a result of the CFAA violation committed by Defendant Ingram. The misconduct resulted in an internal investigation by the BOP, an investigation by the DOJ-OIG, and both the seizure and examination of a BOP computer hard drive.

## **JURISDICTION AND VENUE**

14.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 in that this action arises under the laws of the United States of America and is premised on the acts and omission of the Defendants acting under color of federal law.

15.     This Court further has subject matter jurisdiction pursuant to 18 U.S.C. §1030(g) which permits an individual who suffers damage by reason of a violation of the CFAA to bring a private cause of action. The action is timely filed where it is brought within two years of the discovery of the damage.

16.     This Court further has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1346(b) where Plaintiff sues the Defendant the United States of America, for money damages, for injury caused by the negligent and wrongful acts and employees of the Government while acting within the course and scope of their office or employment, under the circumstances where the Defendant, is a private person, would be liable to the Plaintiff.

17.     Jurisdiction founded upon federal law is proper in that this action is premised on federal causes of action under the Federal Tort Claims Act ("FTCA") pursuant to 28 U.S.C.§ 2671.

18.     Pursuant to FTCA, Plaintiff filed a notice of claim on November 14, 2022 and served his claim to the appropriate federal agency for administrative settlement under the FTCA requesting $1,000,0000 or more.

19.     By letter dated June 15, 2023, Plaintiff's claim was denied in writing by the North Central Regional Office of the Federal Bureau of Prisons and such denial was sent by certified mail to the Plaintiff's counsel (Claim #TRT-NCR-2023-02361).

20.     This action is timely pursuant to 28 U.S.C. § 2401(b) in that it was presented to appropriate federal agency within two years of accrual and this action was filed within six months of the receipt of the certified letter sent by the federal agency denying the claim.

21.     This Court also enjoys supplemental jurisdiction, if necessary, under 28 U.S.C. § 1367 in connection with claims against Defendant Kebe, who if not

acting as a contractor for the federal government, is liable for claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy.

22.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1391(c), as Defendants do business in this judicial district and a substantial part of the events giving rise to the claim occurred in this judicial district.

## PARTIES

23.     Plaintiff, Robert S. Kelly, is a 56-year-old Chicago native. He is indisputably the King of R & B. He is currently an inmate incarcerated in the Butner Federal Correctional Center in Butner, North Carolina. At times relevant to this Complaint, Plaintiff was an inmate at the Metropolitan Correctional Center in Chicago, Illinois.

24.     Defendant, United States of America, is subject to suit for injury caused by the negligent and wrongful acts and omission of employees of the Government while acting within the course and scope of their office and employment, under the circumstances where the Defendant, if a private person, would be liable to the Plaintiff, pursuant to the FTCA.

25.     At all times material to this action, Defendant Ingram was a Federal BOP Disciplinary Hearing Officer and law enforcement official employed by the BOP with access to the BOP's TruView system.

26.     At all times material to this action, Unknown John and Jane Doe BOP Officers, were BOP officers assigned to the Chicago MCC (and perhaps other BOP

institutions) with access to the BOP's TruView system. Although Plaintiff does not know the identities of the 60 different BOP officers who made unauthorized access to his confidential information, the BOP does. Plaintiff sues each and every BOP officer who accessed his confidential information without authority and whose identifies are available from the BOP.

27.     At all times material to this action, LaTasha Kebe, is a resident of Lawrenceville, Georgia. Kebe is a popular YouTube host with a YouTube channel called "UnWinewithTashaK." She broadcasts content to 1.3 million subscribers across the country, including in Chicago, Illinois.

## FACTS

28.     Plaintiff was arrested in the United States District Court, Northern District of Illinois ("NDIL") on July 11, 2019 in connection with a 13-count indictment *United States v. Kelly,* 19 CR 567. Shortly thereafter, Plaintiff was separately indicted in the United States District Court for the Eastern District of New York ("EDNY") in connection with RICO charges brought under case number 19 CR 286.

29.     After his arrest, Plaintiff was detained in the Metropolitan Correctional Center in Chicago ("MCC") for nearly two years until he was transferred to the Metropolitan Detention Center in Brooklyn ("MDC") to face trial in the EDNY case in and around June 21, 2021. During this period of time, Plaintiff was a pretrial detainee.

30.    While detained in the MCC, in and around January 2020, Plaintiff's longtime girlfriend ("Jane Doe") began behaving in a hostile and accusatory fashion toward the Plaintiff without explanation. Jane Doe was furious with Plaintiff and unexpectedly began causing stress and conflict in the relationship. These arguments related to money issues, romantic issues, and other highly personal issues. Plaintiff later learned that in and around that time, Jane Doe abruptly began cooperating with the government which led to her becoming the government's star witness against him in the EDNY prosecution.

31.    In and around that time, Defendant Kebe, a popular You Tube blogger began publishing information to her 1.1 million subscribers and other viewers private information about the Plaintiff to which she should not have had access. Defendant Kebe did not reveal how she received said confidential information.

32.    Just by way of example, on November 7, 2019, Defendant Kebe posted a video on YouTube titled "R.Kelly Can't Control his Girlfriends while Behind Bars." Kebe told her viewers that the information came from a "phone tap somewhere." Kebe disclosed information that appeared to come from Plaintiff's prison calls with Jane Doe and his girlfriend JS. Kebe appeared to disclose private and personal information about Plaintiff's romantic relationships.

33.    Defendant Kebe proceeded to divulge to her YouTube viewers the contents of Plaintiff's prison phone calls with his girlfriend and others, email communications about his private life and legal issues with numerous people, visitor logs, and trust account information on numerous other occasions, again

9

without disclosing from where she received the information or how she received the information.

34.     Plaintiff was incarcerated and had no ability to watch Kebe's YouTube channel or learn the specific information that was being said by Defendant Kebe.

35.     At one point, Plaintiff visited with Jane Doe and was shocked and confused when Jane Doe accused him of making certain statements concerning his personal life that were only shared with Plaintiff's lawyer at the time. Jane Doe refused to divulge how she received the information but claimed that she was privy to Plaintiff's conversations with his attorney(s).

36.     Plaintiff had no idea how certain private information was making its way into the public domain. In early 2020, the BOP went on a complete lockdown as a result of the pandemic for a year. Attorney visits were conducted entirely by phone call and eventually zoom visits and face to face visits did not resume until late 2022. It is unclear how many of Plaintiff's attorney client communications were shared with third parties by Defendant Ingram or why those communications were being recorded at all.

37.     In June 2021, Plaintiff was transferred to the MDC in Brooklyn, New York to stand trial in his RICO prosecution. His federal RICO trial commenced on August 9, 2021. A jury returned a verdict against him on September 27, 2021.

38.     Plaintiff's current counsel filed an appearance in the EDNY case in October 2021 for the purpose of handling post-trial motions and the eventual

appeal. Her role expanded after Plaintiff's original trial lawyers withdrew from the EDNY case by January 2022.

39.     Undersigned counsel filed an appearance in the Northern District case on February 18, 2022 and with her legal team began preparing for Plaintiff's Northern District trial scheduled to commence in August.

40.     After counsel's legal team received information about the unauthorized and illegal taking/selling of Plaintiff's private information, counsel sought discovery from the government.

41.     On June 14, 2022, attorneys for the government produced to Plaintiff's counsel an application and affidavit for a search warrant under the case caption *In the Matter of the Search of the HP desktop computer, bearing serial number 2UA8480JG51506.* The materials did not include Plaintiff's name or any BOP officer name. Neither Plaintiff nor his counsel had access to the anonymously filed search warrant application and affidavit until it was produced by the government on June 14, 2022. The government refused to provide any additional information despite Plaintiff's request.

42.     According to the materials produced in June 2022, Special Agent of the Department of Justice of the Inspector General Matt Loux ("Agent Loux") executed an affidavit in support of a search warrant for a computer located in the Northern District of Illinois related to a violation of 18 U.S.C. § 1030(a)(2)(B), that is, Unauthorized Access of a Computer by obtaining information from the Federal Bureau of Prisons.

43.     Agent Loux averred that the OIG received information from the BOP that Defendant Ingram, referred to only as Officer A, was suspected of accessing "sensitive law enforcement information maintained on the BOP's electronic systems and providing that sensitive information to an individual who then released the information on social media platforms."

44.     Specifically, the Warden of the MCC in Chicago reported an allegation of staff misconduct to the BOP office of Internal Affairs when MCC staff became aware that Unknown BOP officers, including Defendant Ingram, had stolen Plaintiff's sensitive information from the BOP's electronic system, known as the TruView system, without authority to do so.

45.     The BOP's TruView system is an application that contains information on inmates, including inmate emails, inmate telephone calls, inmate visitation lists, and inmate funds. The TruView system contains information from various other applications and systems existing on BOP's network infrastructure. The information available on TruView includes information from BOP application TRUFONE, the inmate telephone system, which houses recording of inmate telephone calls.

46.     Agent Loux's investigation showed that Defendant Ingram had not only made unauthorized access to Plaintiff's TruView records, but stole information from the records, downloaded information, and then divulged that information to YouTube blogger Defendant Kebe. Defendant Kebe then revealed that stolen and sensitive information to the general public and to specific third parties including

Jane Doe. On information and belief, Defendant Kebe and other unknown individuals bought the information from Defendant Ingram.

47.     The information constituted, *inter alia,* private conversations between Plaintiff and Jane Doe and his girlfriend JS. The communications related to personal and private relationship matters, financial issues, and even attorney client matters. Although Plaintiff did not know at the time how Jane Doe obtained the information, when Plaintiff had the opportunity to learn of the contents of Agent Loux's affidavit, he deduced that the information had been stolen by Defendant Ingram (referred to only as Unknown Officer A), sold to Defendant Kebe, and then exploited for profit when Defendant Kebe divulged it the public and to other third parties, including Jane Doe.

48.     Defendant Kebe recently admitted on one of her broadcasts that she did obtain the information from Defendant Ingram (although she did not refer to her by name) and not only disseminated the information publicly but provided additional information to Jane Doe and others, including Jane Doe's family members for the purpose of interfering with Plaintiff's criminal prosecutions.

49.     The release of this private information on the internet created a feeding frenzy about Plaintiff's personal life, his relationship with Jane Doe and JS, and resulted in the termination of certain important relationships that Plaintiff enjoyed with other individuals. The unauthorized release of the information led to a physical fight between Jane Doe and JS that made national news, the theft of thousands of dollars, and chaos and discord in Plaintiff's life.

50.     Furthermore, because information about Plaintiff's visiting lists and trust fund balances became public news, Plaintiff was no longer able to enjoy certain important and supportive relationships with people. Defendant Kebe released the names of certain individuals who supported Plaintiff, publicly shamed those people calling them "enablers," and interfered with those relationships. Understandably, Plaintiff's associates did not wish to be harassed or have their employment put in jeopardy because of the illegal conduct of Defendant Ingram and and Kebe. Plaintiff suffered significant emotional distress as a result of the release of this information and further worried about what other *private* information was in the hands of third parties.

51.     Both before and even after Plaintiff learned about Agent Loux's affidavit, Plaintiff spent sleepless nights distressed and confused how his private conversations had been leaked to the public and who was responsible for it.

52.     Importantly, Plaintiff suffered emotional distress because he did not feel at liberty to freely speak with his attorneys. Plaintiff learned that his attorney client communications were not only recorded but information from those calls were released to Jane Doe and presumably others. Plaintiff did not, and still does not, know the extent to which his private information has been divulged publicly.

53.     Agent Loux's investigation revealed that from the period of July 15, 2019 through January 8, 2020, 60 different BOP officers accessed Plaintiff's TruView records, including Defendant Ingram. Indeed, Defendant Ingram engaged in unauthorized access to Plaintiff's TruView records a whopping 153 times. To this

day, Plaintiff still does not know the extent of his damages, injuries and loss, as the Government has refused to disclose to the Plaintiff information about what the investigation revealed and the precise nature of the stolen information.

54.     Agent Loux's investigation showed that private and sensitive information from Plaintiff' TruView records became part of Defendant Kebe's content in her Instagram posts on January 12, 2020, in videos on November 7, 2019, November 8, 2019, and December 22, 2019. The information included private information about Plaintiff's literacy, his medical issues, private information about his romantic relationships. At no point did Defendant Kebe reveal the identity of the person who provided her with the information. Indeed, the identity of the individual who revealed the information to Defendant Kebe was only revealed on March 4, 2024 when the Defendant United States of America disclosed the name of "Unknown BOP Officer A" in their Rule 26(a) Disclosures.

55.     Agent Loux's investigation further showed that Defendant Ingram stole Plaintiff's records from the TruView system, scanned those records, and then emailed that scan to third parties, including Defendant Kebe. The content of those materials were published on Defendant Kebe's YouTube channel.

56.     Defendant Ingram was not the only BOP officer who engaged in unauthorized access of Plaintiff's private records. Indeed, Agent Loux reported that at least 60 BOP officers had made unauthorized access to Plaintiff's confidential TruView records during a six month period. The BOP knows the precise identity of those officers as do the officers who engaged in this unauthorized conduct.

15

57.     Even after the BOP discovered these rampant violations of the CFAA, they allowed the behavior to continue. The Plaintiff learned that in and around August 4, 2022 an Unknown BOP Officer made an unauthorized access to his TruView records and obtained information about Plaintiff's inmate funds. That Unknown BOP officer leaked information about the balance of funds in his trust account to a journalist for the Washington Post who published an article with the stolen information provided by the Defendant Unknown BOP Officer.

58.     Immediately after the journalist divulged the information, the funds in Plaintiff's trust account were confiscated by the United States Attorney's office. Plaintiff was forced to hire counsel to litigate whether the US Attorney's office had the right to confiscate the finds where no restitution judgment had been entered against Plaintiff and he was not in arrears for paying any court-ordered fees or costs.

59.     Plaintiff promptly filed a notice of claim on November 14, 2022 and served his claim to the appropriate federal agency for administrative settlement under the FTCA requesting $1,000,0000 or more.

60.     By letter dated June 15, 2023, Plaintiff's claim was denied in writing by the North Central Regional Office of the Federal Bureau of Prisons and such denial was sent by certified mail to the Plaintiff's counsel (Claim #TRT-NCR-2023-02361).

61.     This Complaint comes less than six months after Plaintiff's claim was denied.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION: NEGLIGENCE
### (Against the Defendant United States of America)

62.     Plaintiff repeats and re-alleges all of the paragraphs in this Complaint as if fully set forth herein.

63.     The Federal Bureau of Prisons is a United States federal law enforcement agency within the U.S. Department of Justice that operates U.S. federal prisons and is responsible for the care, custody and control of federal prisoners.

64.     Defendant United States of America owed a duty of care to the Plaintiff who was incarcerated in the BOP. The Defendant stood in such a relationship with Plaintiff that the law imposed on the Defendant an obligation of reasonable conduct for the benefit of the Plaintiff, including protecting his confidential and sensitive information, including attorney-client communications, and to protect him from exploitation from its employees that could result in harassment and prejudice to his pending criminal cases.

65.     Specifically, and consistent with its own policies and regulations, Defendant United States had a duty to ensure that Plaintiff's confidential and sensitive information was accessible to only those BOP officials with a legitimate basis to review it. The BOP had a duty to protect the sensitive information from disclosure and theft and to protect both Plaintiff from exploitation by BOP personnel.

66.     As set out in detail above, the Defendant United States breached that duty when it permitted countless BOP officers, including Defendant Ingram, unlimited access to the information, the ability to download it, and the ability to sell and/or divulge it which Defendant Ingram did when she provided private information to Defendant Kebe. The breach further caused the publication of confidential information obtained from Plaintiff's trust account which was stolen and shared with other media sources. Even after the BOP became aware that its employees were repeatedly accessing Plaintiff's private and sensitive information without legal authority, it took no steps to prevent the misconduct.

67.     The breach was the direct and proximate cause of Plaintiff's injuries, namely the release and dissemination of his private and confidential information to third parties and the public at large. The public dissemination of private communications, including attorney client communications, interfered with Plaintiff's relationships, led to harassment from the public and caused serious prejudice to Plaintiff's defense. The Defendant United States knew or should have known that by allowing unfettered access to Plaintiff's private information, BOP officers would access, steal, and exploit that information for financial gain or for clout.

68.     Plaintiff suffered emotional and psychological distress from this breach where his sensitive information was used to harass him, interfere with his personal relationships, and was used to interfere with the defense of his pending cases. Plaintiff also suffered monetary damages, including but not limited to legal fees.

## SECOND CAUSE OF ACTION: INVASION OF PRIVACY
**(Against Defendant Ingram, also known as Officer A, and other John and Jane Doe BOP Officers whose identities have been concealed by the DOJ and BOP, and Defendant Kebe)**

69. Plaintiff repeats and re-alleges all of the paragraphs in this Complaint as if fully set forth herein.

70. Defendant Ingram, and other Unknown BOP Officers committed repeated unlawful and unauthorized intrusions into Plaintiff's "confidential and sensitive" information as defined by the BOP.

71. The intrusion is highly offensive and objectionable to a reasonable person. Although certain privacy rights are forfeited when an individual is arrested and incarcerated, Plaintiff (who was not yet convicted) still maintained a recognized privacy interest in his communications, visitor list information, trust account information, and his attorney client communications per the BOP's express policies.

72. This information, set out in detailed fashion above, was defined as private and confidential by the BOP itself. The information was not for public consumption. Plaintiff had every right to trust that his messages with third parties, his phone calls with friends, family and his lawyers would remain under the care and control of the BOP and not published to the media for financial gain or in connection with interfering with his right to obtain a fair trial.

73. As reflected above, the communications were private in nature. They related to personal and family problems, romantic interests, health problems, literacy issues, and issues related to the defense of his pending criminal cases. Clearly, Plaintiff's conversations with his girlfriend JS were personal and private,

as were Plaintiff's conversations with his attorneys. Simply put, the information was not public information.

74.     The intrusion caused Plaintiff anguish and suffering. The release of his private communications were broadcast to the public. The communications led to the loss of important and close relationships, conflict and chaos in Plaintiff's life, harassment, and extreme paranoia. Plaintiff was isolated and fearful to communicate with his attorneys or other third parties where he knew that his private information and conversations could (and did) get released to the general public for mass exploitation.

75.     This violation even led to Plaintiff having to seek psychological care in the MCC for psychological stress caused by this intrusion of privacy.

**THIRD CAUSE OF ACTION: CONVERSION**
**(Against Defendant Ingram, also known as Officer A, and other John and Jane Doe BOP Officers whose identities have been concealed by the DOJ and BOP, and Defendant Kebe)**

76.     Plaintiff repeats and re-alleges all of the paragraphs in this Complaint as if fully set forth herein.

77.     Defendant Ingram made repeated unauthorized access to Plaintiff's private and sensitive information. She downloaded Plaintiff's private information, including email communications, recorded phone calls, visiting lists, and trust account information and sold the information to Defendant Kebe.

78.     Defendant Kebe used the stolen and private information for financial gain by divulging it to millions of people via her YouTube platform.

79.     The information belonged to Plaintiff and was maintained by the BOP on behalf of the Plaintiff. But for BOP policies assuring the Plaintiff that the information would not be disseminated publicly, Plaintiff would never have made certain communications. Defendant Ingram took unauthorized control of the property and shared it with third parties causing Plaintiff serious damages as detailed above.

**FOURTH CAUSE OF ACTION: CIVIL CONSPIRACY**
**(Against Defendant Ingram, also known as Officer A, and other John and Jane Doe BOP Officers whose identities have been concealed by the DOJ and BOP, and Defendant Kebe)**

80.     Plaintiff repeats and re-alleges all of the paragraphs in this Complaint as if fully set forth herein.

81.     As described more fully in the preceding paragraphs, Defendant Ingram and Unknown John and Jane Doe Officers acting in concert with one another and other co-conspirators, known and unknown, conspired to accomplish an unlawful purpose by unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of his rights.

82.     In furtherance of the conspiracy, Defendant Ingram and Unknown Defendant BOP Officers committed overt acts and were otherwise willing participants in joint activity.

83.     The violations of Illinois law described in this complaint, including Defendants' invasion of privacy and violations of the Federal Computer Fraud and Abuse were accomplished by Defendants' conspiracy.

84.     The misconduct described in this Count was objectively unreasonable, was undertaken intentionally, and in total disregard of Plaintiff's rights.

85.     As a direct and proximate result of this misconduct, Plaintiff suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

## FIFTH CAUSE OF ACTION: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**(Against Defendant Ingram, also known as Officer A, and other John and Jane Doe BOP Officers whose identities have been concealed by the DOJ and BOP, and Defendant Kebe)**

86.     Plaintiff repeats and re-alleges all of the paragraphs in this Complaint as if fully set forth herein.

87.     The acts and conduct of the individual Defendants as set forth above were extreme and outrageous. The Defendants intended to cause or were in reckless disregard of the probability that their conduct would cause severe, emotional distress to Plaintiff.

88.     The individual Defendants' actions and conduct directly and proximately caused severe emotional distress to Plaintiff, and thereby constituted intentional infliction of emotional distress.

89.     The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to Plaintiff's rights.

90.     As a direct and proximate result of Defendants' wrongful acts, Plaintiff suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

## SIXTH CAUSE OF ACTION: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against Defendant Ingram, also known as Officer A, and other John and Jane Doe BOP Officers whose identities have been concealed by the DOJ and BOP, and Defendant Kebe)

91.　　Plaintiff repeats and re-alleges all of the paragraphs in this Complaint as if fully set forth herein.

92.　　At all times relevant to this complaint the Defendants had a duty to refrain from willful and wanton conduct.

93.　　Notwithstanding that duty, these Defendants acted willfully and wantonly through a course of conduct that showed an utter indifference to, or conscious disregard of, Plaintiff's rights.

94.　　As a direct and proximate result of Defendants' wrongful acts, Plaintiff suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

## SEVENTH CAUSE OF ACTION: VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT
### (Against Defendant Ingram)

95.　　Plaintiff repeats and re-alleges all of the paragraphs in this Complaint as if fully set forth herein.

96.　　As detailed above, Defendant Ingram intentionally accessed information from an agency of the United States of America, namely the BOP without authorization and divulged/sold the protected information to third parties.

97.　　Specifically, Defendant Ingram accessed the TruView records of Plaintiff, a BOP prisoner, without authorization or she/he exceeded authorized

access in order to obtain TruView records which consisted, *inter alia,* of email communications, recorded phone calls, visitor lists, trust account information, and attorney client communications.

98.     The information accessed and retained by Defendant Ingram from a BOP Computer has been determined by the United States of America to be protected against unauthorized disclosure.

99.     Defendant Ingram sold/transmitted that protected information to a third party who publicly disseminated it.

100.    Plaintiff only learned the identity of this Defendant on March 4, 2024.

101.    A search warrant application filed by Special Agent Loux shows that probable cause exists to believe that Defendant Officer A, now known as Defendant Ingram, committed the offense of 18 U.S.C. 1030(a)(2)(B)

102.    Losses in excess of $5000 accrued as a result of the CFAA violation committed by Defendant BOP Officer A. The misconduct resulted in an internal investigation by the BOP, an investigation by the DOJ-OIG, and both the seizure and examination of a BOP computer hard drive.

**WHEREFORE**, Plaintiff Robert Kelly prays this Court enter judgment in his favor and against Defendants United States of America, Defendant Ingram, Unknown John and Jane Doe BOP Officers, and Latasha Kebe awarding compensatory damages, costs and attorneys' fees against all Defendants, and punitive damages against each of the individual Defendants in their individual

capacities; and for such further and additional relief as this Court may deem

appropriate and just.

## JURY DEMAND

Plaintiff demands trial by jury.

Respectfully Submitted,

**ROBERT S. KELLY**

By:   <u>/s/JENNIFER BONJEAN</u>

*One of His Attorneys*

Jennifer Bonjean
Ashley Cohen
Bonjean Law Group, PLLC
750 Lexington Ave., 9th Fl.
New York, NY 10022
718-875-1850

**<u>Chicago Address</u>**
53 W. Jackson Blvd., Ste. 315
Chicago, Illinois 60604